```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
  In re:                                            :
                                                    :
  RESIDENTIAL CAPITAL, LLC, et al.,                 :
                                                    :
                                      Debtors.      :
-------------------------------------------------------- :   15-CV-2712 (JPO)
  ROWENA DRENNEN, individually and as               :
  representative of the KESSLER SETTLEMENT          :   OPINION AND ORDER
  CLASS, et al.,                                    :
                                                    :
                                      Plaintiffs,   :
                                                    :
                        -v-                         :
                                                    :
  CERTAIN UNDERWRITERS AT LLOYD'S                   :
  OF LONDON et al.,                                 :
                                                    :
                                      Defendants    :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiffs filed this breach of contract action as an adversary proceeding in the Bankruptcy Court for the Southern District of New York on February 4, 2015. *See Drennen et al. v. Certain Underwriters at Lloyd's of London et al.*, No. 15-ap-1025 (Bank. S.D.N.Y. 2015). Eight of the twelve Defendants in this suit have moved to withdraw the reference to the bankruptcy court.[1] (Dkt. No. 1.)  For the reasons that follow, the motion to withdraw the reference is denied.

---

[1] Defendants in this adversary proceeding include: (1) Certain Underwriters at Lloyd's of London; (2) Twin City Fire Insurance Company; (3) Continental Casualty Company; (4) Clarendon National Insurance Company; (5) Swiss RE International SE; (6) ACE Bermuda Insurance Ltd.; (7) XL Insurance (Bermuda) Ltd.; (8) American International Reinsurance Company; (9) Chubb Atlantic Indemnity Ltd.; (10) Steadfast Insurance Company; (11) St. Paul Mercury Insurance Company; and (12) North American Specialty Insurance Company.  This motion was filed by all Defendants except four: ACE Bermuda Insurance Ltd.; XL Insurance (Bermuda) Ltd.; American International Reinsurance Company; and Chubb Atlantic Indemnity Ltd..  References to "Defendants" in this Order include all Defendants except those four.

**I.    Background**

Plaintiffs in this action include the representatives of two class actions (together, the "Class Plaintiffs") and ResCap Liquidating Trust, the successor to Residential Funding Company, LLC ("RFC"). Before its bankruptcy, RFC was a company that specialized in the purchase and resale of mortgage loans. (Dkt. No. 3 ("Def.'s Memo.") ¶ 8.) The Class Plaintiffs are individuals who obtained mortgage loans, which RFC later acquired on the secondary market. (*Id.* ¶ 9.) In two lawsuits filed before RFC's bankruptcy—the *Kessler* action and the *Mitchell* action—the Class Plaintiffs claimed that their mortgage loans violated homeowner protections statutes, and that RFC was liable to them as a result. (*Id.*; Dkt. No. 60 ("Def.'s Reply") ¶¶ 2, 7-10.)

This action concerns whether RFC's insurance policies cover the claims asserted in the class actions. Defendants are insurance companies that issued insurance policies (the "GM Policies") to General Motors, RFC's corporate parent, before RFC's bankruptcy. (Def.'s Memo. ¶ 2.) Defendants argue that the GM Policies do not cover Plaintiffs' claims. (*Id.*) The Class Plaintiffs contend that their claims are covered, and that Defendants owe them "more than $314 million in indemnity payments." (*Id* ¶ 3.) RFC agrees that the claims are covered and asserts a right to reimbursement from Defendants for approximately $41 million in defense costs and pre-bankruptcy settlements paid to the Class Plaintiffs. (*Id.*)

RFC filed for bankruptcy on May 14, 2012. *See In re Residential Capital LLC*, No. 12-bk-12020 (Bank. S.D.N.Y. 2012). The Class Plaintiffs filed proofs of claim in RFC's bankruptcy proceeding; Defendants did not. (Dkt. No. 50 ("Pl.'s Opp.") at 4; Def.'s Memo. ¶ 4.) On December 11, 2013, the Honorable Martin Glenn confirmed a global settlement and Chapter 11 liquidation plan (the "Plan"). *Residential Capital*, No. 12-bk-12020, Dkt. No. 6065. The Plan approved a $300 million allowed claim for the *Kessler* Class Plaintiffs, and a $14.5 million

allowed claim for the *Mitchell* Class Plaintiffs.  (Pl.'s Opp. at 4-5.)  It assigned the right to recover insurance proceeds under the GM Policies to the Class Plaintiffs to satisfy their allowed claims.  (Pl.'s Opp. at 5.)  The Plan assigned the right to recover defense costs and pre-bankruptcy settlements to RFC's successor, the ResCap Liquidating Trust.  (*Id.*)

Plaintiffs filed this adversary proceeding in the bankruptcy court on February 4, 2015.  *Drennen*, No. 15-ap-1025, Dkt. No. 1.  The case was reassigned from Judge Glenn to the Honorable Sean Lane on March 30, 2015.  *Id.* at Dkt. No. 87.

## II.     Legal Standard

District courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11" of the United States Code, *i.e.*, the Bankruptcy Code.  28 U.S.C. § 1334(b).  District courts may refer such proceedings to bankruptcy courts for adjudication.  *Id.* § 157(a).  Once a matter is referred, bankruptcy courts have authority to enter final judgments in matters that are "core" to the bankruptcy proceeding.[2]  *Id.* § 157(b)(1).  If a matter is "non-core" but nonetheless related to a case arising under title 11, the bankruptcy court may "propose findings of fact and conclusions of law," which the district court reviews *de novo*.  *Exec. Benefits Ins. Agency v. Arkinson*, 134 S.Ct. 2165, 2172 (2014) (citing 28 U.S.C. § 157(c)(1)).

Cases referred to bankruptcy court may be withdrawn for cause.  28 U.S.C. § 157(d).  Under Second Circuit precedent, district courts evaluating motions to withdraw a reference to

---

[2] In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court held that bankruptcy courts "lacked the constitutional authority to enter . . . final judgment[s]" with respect to certain state law counterclaims that the Bankruptcy Amendments and Federal Judgeship Act of 1984 had designated as "core" proceedings.  *Id.* at 2620.  After *Stern,* courts assess not only whether a matter is classified as "core" by statute, but also whether final judgment by a bankruptcy court would violate Article III of the Constitution.  *Exec. Benefits Ins. Agency v. Arkinson*, 134 S.Ct. 2165, 2172 (2014) ("*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court . . . .").

bankruptcy court undertake a two-part inquiry. *See Orion Pictures Corp. v. Showtime Networks Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1101 (2d Cir. 1993). Courts first consider whether the claim at issue is "core" to the bankruptcy proceeding. *Id.* In general, "[a] proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y. 2012) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006)). The conclusion that a matter is "non-core" supports but does not require withdrawal. *Id.* at 593 ("While the non-core nature of [Plaintiff's] claims weighs in favor of withdrawing the reference from the bankruptcy court, the core/non-core determination does not end the inquiry."); *see N.E. Indus. Dev. Corp. v. ParkStone Capital Partners, LLC* (*In re N.E. Indus. Dev. Corp.*), 511 B.R. 51, 53 (S.D.N.Y. 2014) (collecting cases).

After making the "core/non-core determination," courts consider whether withdrawal is prudent. *Orion*, 4 F.3d at 1101. Relevant factors include the "efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, [and] the prevention of forum shopping." *Id*. Ultimately, the guiding concern in the *Orion* inquiry is efficient and uniform judicial administration.

### III. Discussion

Defendants assert that this action is non-core and that the *Orion* factors necessitate withdrawal of the reference. Plaintiffs argue that the action is core and that, even if it is not, judicial efficiency favors keeping the matter in bankruptcy court.

#### A. Core v. Non-Core Determination

In determining whether a contract dispute is core to a bankruptcy proceeding, courts consider "(1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization." *Mt. McKinley Ins. Co. v. Corning*

*Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (quoting *In re United States Lines*, 197 F.3d 631, 637 (2d Cir. 1999)). Courts also assess "the nature of the proceeding." *Id.* A dispute may be "core by virtue of [its] nature" if it is "unique to or uniquely affected by" a bankruptcy proceeding, or if resolution of the dispute will "directly affect a core bankruptcy function." *Id.* (quoting *United States Lines*, 197 F.3d at 367).

The contracts at issue in this case are antecedent to RFC's bankruptcy petition. (Def.'s Reply ¶ 2.) Nonetheless, Plaintiffs contend that their claims are "inextricably linked to the [RFC] bankruptcy." (Pl.'s Opp. at 1.) Plaintiffs argue, specifically, that this action is core because (1) their participation in the claims allowance process tied their rights to the bankruptcy proceeding; (2) resolution of their claims requires interpretation and enforcement of the Plan; and (3) any recovery under the GM Policies will affect the assets available for distribution to RFC's creditors.[3] (Pl.'s Opp. at 13-15.)

None of these arguments is sufficient to render this action core. Participation in the bankruptcy process does not, by itself, transform a contract suit into an action that "derive[s] directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case." *MBNA Am. Bank*, 436 F.3d at 109; *see also Olin Corp. v. Riverwood Int'l Corp.* (*In re Manville Forest Products*), 209 F.3d 125, 129 (2d Cir. 2000) ("The fact that the contingency in this case . . . materialized post-petition does not transmogrify the claim into a post-petition claim . . . ."). The GM Policies existed more than a decade before RFC's bankruptcy; RFC informed

---

[3] Plaintiffs also argue this action falls under the public rights exception to the holding in *Stern v. Marshall*, 131 S.Ct. 2594 (2011). (Pl.'s Opp. at 23.) That exception, which permits final adjudication by a bankruptcy court in cases involving "public rights," has been the subject of considerable debate. *See Dynegy Danskammer L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp 2d 526, 531 (S.D.N.Y. 2012) (collecting cases on the public rights doctrine). The Court concurs with other judges in this District that, "regardless of the exact contours of the public rights exception, th[is] state law breach of contract claim is clearly outside its bounds." *Id.*; *see also Stern*, 131 S. Ct. at 2618 ("[E]ven with respect to matters that arguably fall within the scope of the 'public rights' doctrine, the presumption is in favor of Art. III courts.") (citation omitted).

Defendants of the class action lawsuits before it filed for bankruptcy; and Defendants did not file proofs of claim in bankruptcy court. *See Mt. McKinley Ins.*, 399 F.3d at 448 ("[T]he pre-petition execution of the insurance contracts suggests that this lawsuit is not core to [the] reorganization."); *Residential Capital, LLC v. Suntrust Mortgage, Inc.* (*In re Residential Capital, LLC*), No. 14-CV-6015, 2015 WL 739829, at *6 (S.D.N.Y. Feb. 20, 2015) ("[T]he Second Circuit has found that a breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core." (citation omitted)). Confirmation of the Chapter 11 Plan does not change these facts.

Plaintiffs' second argument also fails. Plaintiffs assert that this action is core because its "resolution will require the interpretation and enforcement of orders previously entered by the bankruptcy court." (Pl.'s Opp. at 14.) Courts have repeatedly rejected this "application and enforcement" argument in contract claims involving the RFC bankruptcy. *See, e.g.*, *Suntrust*, 2015 WL 739829, at * 6; *Residential Funding Co. LLC v. Greenpoint Mortg. Funding, Inc.* (*In re Residential Capital, LLC*), 519 B.R. 593, 601 (S.D.N.Y. 2014) ("[T]he mere fact that a bankruptcy court has jurisdiction over a matter cannot establish that the matter is core.") The same result is appropriate here.

Finally, Plaintiffs argue that this action is core because any recovery will affect the assets available for distribution to RFC's creditors. (Pl.'s Opp. at 15.) To support this argument, Plaintiffs cite *In re United States Lines*, 197 F. 3d 631 (2d Cir. 1999), a case concerning insurance coverage for thousands of asbestos-related tort claims against a debtor. As Defendants note, *United States Lines* has been narrowed by later rulings and, unlike this case, involved an insurance policy that contained a "pay-first" provision. *See DeWitt Rehab.*, 464 B.R. at 592 ("The circuit court . . . found U.S. Lines' proceeding to be 'core,' but only because [of] 'pay-first' provisions in [the] insurance policies which required U.S. Lines to satisfy claims from its

6

own funds before seeking indemnification, would have been largely impossible to meet without allocating assets otherwise earmarked for other creditors.").

Plaintiffs argue that, despite the absence of a pay-first provision in the GM Policies, *United States Lines* governs because the insurance policies represent "the most significant source of recovery for the *Kessler* and *Mitchell* Classes." (Pl.'s Opp. at 15.) Plaintiffs also note that any recovery on their claims will "collaterally affect the recovery of other borrower-creditors." (*Id.*) While this may be true, the collateral consequences of state law actions do not necessarily make those actions core. *See Orion*, 4 F.3d at 1101; *Suntrust*, 2015 WL 739829, at *6 ("[F]inding that [core jurisdiction] encompassed any breach of contract action . . . that would be expected to inure to the benefit of the debtor estate would create an exception . . . that would swallow the rule.") (citations, alterations, and internal quotation marks omitted); *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp 2d 526, 532 (S.D.N.Y. 2012) ("Although [Plaintiff's] claim clearly does involve some of the estate's property, such involvement alone is not sufficient to render a claim core."). In this case, moreover, the structure of RFC's bankruptcy does not hinge on the outcome of Plaintiffs' suit, since a Chapter 11 Plan has already been confirmed.

The potential consequences of this suit do not warrant departure from the general principle that "traditional contract actions arising under state law" are non-core. *DeWitt Rehab*, 464 B.R. at 592 (citation omitted). Given the pre-petition nature of the GM policies, the absence of a pay-first provision, and the existence of a confirmed Chapter 11 plan, the Court concludes that this action is non-core.

    **B.**    ***Orion* Factors**

The non-core status of this proceeding advances the argument for withdrawal. The remaining *Orion* factors, however, support denial of Defendants' motion. Concerns about forum

shopping and uniform bankruptcy administration are neutral given the nature of this action and the fact that both parties seek to litigate in their forum of choice.  Concerns for efficiency and delay, in contrast, weigh strongly in favor of keeping this matter in bankruptcy court.  Judge Lane has effectively managed this complex dispute since receiving it more than eight months ago.  Since March 2015, Judge Lane has presided over a number of conferences, denied a stay, approved scheduling orders, and heard oral argument on pending motions.  *See Drennen*, No. 15-ap-1025, Dkt. Nos. 121, 125, 204, 249, 263 (Bank. S.D.N.Y.).

Withdrawing the reference at this stage of the proceeding would cause undue delay to the parties and would waste judicial resources.  Judge Lane has expended considerable effort thus far, and his continued management of this case benefits both the parties and this Court.  As other courts have noted, "experience strongly suggests that having the benefit of the [bankruptcy court's] report and recommendation will save the district court and the parties an immense amount of time."  *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 48 (S.D.N.Y. 2013) (Rakoff, J.) (quoting *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012)).  In light of these efficiency concerns, and having considered all the *Orion* factors, the Court determines that this action should remain before Judge Lane.

### IV. Conclusion

For the foregoing reasons, the motion to withdraw the reference to the bankruptcy court is DENIED.  The Clerk of the Court is instructed to close the motion at Docket Number 1.

SO ORDERED.

Dated: December 21, 2015
    New York, New York

_____
J. PAUL OETKEN
United States District Judge